## Sheetz *v.* Spagnol, Appellant.

*Daniel J. Snyder,* with him *Costello, Snyder, Berk & Horner,* for appellant.

*Joseph M. Loughran,* with him *William J. Ober,* and *Loughran & Loughran,* for appellees.

OPINION BY CERCONE, J., March 27, 1973:

This is an appeal in an assumpsit action which was tried nonjury on a stipulated set of facts and in which the issue presented was whether there was personal liability on the part of the individual defendant Spagnol for the payment of $20,000 "as per Paragraph 2" of the Agreement entered into between plaintiffs and defendant.

Under paragraph 1 of that agreement, Spagnol purchased from plaintiffs all of the stock of the Penn Albert Corporation at a "sales price" of $15,000, which sales price he has paid.

That paragraph reads as follows:

"1. First parties shall on July 1, 1965, sell, assign, transfer and set over unto second party all of the stock of said Corporation, free and clear of all pledges, liens and claims, for a total sales price of Fifteen Thousand ($15,000.00) Dollars, which represents a sales price of Five ($5.00) Dollars per share for three thousand (3,000) shares. Said Fifteen Thousand ($15,000.00) Dollars is payable by the second party to the first parties as follows:

"$5,000.00 cash upon the execution of this agreement and the remaining $10,000.00 payable in cash within six (6) months of date of this agreement."

Paragraph 2 provides:

"2. Second party, as owner of the stock of said Corporation to be assigned and transferred to him, shall exercise his ownership control of said Corporation so that *said Corporation shall pay* to first parties within twenty-four (24) months of date of this agreement, ten percent (10%) of all the claims, accounts and obligations held by the first parties hereto or any member of their family, *against said Corporation,* except that the total amount represented by the said ten percent (10%) of claims, accounts and obligations as aforesaid, shall not exceed nor be less than Twenty Thousand ($20,000.00) Dollars. All monies payable to the second party hereto by said Corporation, pursuant to this paragraph shall bear interest at the rate of six percent (6%) per annum." (Emphasis supplied.)

Paragraph 1 expressly and specifically imposed individual liability on defendant Spagnol to pay the purchase price of $15,000 for the stock. Paragraph 2, however, does not place any obligation on defendant to pay

the $20,000. This amount is specifically set forth as owed by the corporation and to be paid by the corporation.

Despite the fact that the agreement sets the "sales price" payable by defendant Spagnol for the stock at $15,000, which he has paid, and despite the obvious fact that in paragraph 2 there is no assumption by him of any personal liability for the payment of the $20,000 due by the corporation to the plaintiffs but merely a promise by him (the breach of which has not been claimed or relied upon) that he would exercise his ownership control so that the *"Corporation shall pay"*, in a sum not to exceed $20,000, the plaintiffs' claims *"against said Corporation"*, the court below nevertheless found defendant personally liable as a matter of law through the device of piercing the corporate veil. The court reasoned "that the defendant individual, Arthur J. Spagnol, is attempting to use the Corporation in this case as a shield against his personal liability for the purchase of the stock. To permit this would result in a grave injustice."

We cannot agree. The claimed injustice or inequity to the plaintiffs arose from the very clear and explicit terms of the agreement in which plaintiffs chose to enter. Had plaintiffs wished the defendant and not the corporation to pay the $20,000, they should have so provided in the agreement. Instead, paragraph 2 refers only to the corporation's payment of its debts to the plaintiffs.

The corporate entity was without any legal basis improperly disregarded by the court below merely to rewrite the contract so as to provide for personal liability where none was provided. That this cannot be done was clearly shown in *Tucker v. Binenstock*, 310 Pa. 254, 264 (1933), where the court, though permitting in that case a disregard of the corporate fiction to avoid the perpetration of a fraud upon the government, care-

fully noted the distinction between such case and those in which "we have held that we cannot set aside the corporate entity merely to accomplish or set up what would simply be an individual transaction . . . (Flinn's Est., 310 Pa. 206; Callery's App., 272 Pa. 255). . .".

The lower court has in this case, through its improper disregard of the corporate existence, rewritten an explicit contract so as to impose personal liability where none has been contracted. Defendant is not in this case using the corporate fiction to shield himself from liability. There is not the slightest intimation of any fraudulent attempt or calculated intent by defendant Spagnol to conceal himself behind the corporate veil to the detriment of plaintiffs. It is the agreement itself, admittedly valid and freely entered into by the plaintiffs, that shields defendant from the liability sought to be imposed by plaintiffs. To permit the corporate veil to be pierced under these circumstances would be not preventing an injustice but in fact creating an injustice by allowing plaintiffs to impose upon defendant a liability different than that they agreed to impose upon him.

Judgment reversed.